UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

MARK XAVIER WALLACE

        Petitioner,

   v.                          **ACTION NO. 4:12cv170**
                        **[ORIGINAL CRIMINAL NO. 4:10cr116]**

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND FINAL ORDER

This matter comes before the court for the purpose of resolving Ground One of the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion"), filed pro se on November 5, 2012, which asserts a claim of ineffective assistance of counsel during plea bargaining. For the reasons set forth herein, that claim is **DISMISSED** and the Motion is **DENIED** in its entirety.

### I. PROCEDURAL BACKGROUND

The court set forth a detailed procedural history in a Memorandum Order entered on January 30, 2013. By way of brief summary, the underlying criminal case originated with a single-count indictment, filed on October 13, 2010, charging the Petitioner with unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). After a three-day jury

trial, the Petitioner was found guilty on December 17, 2010, and sentenced on March 22, 2011, to 120 months imprisonment.

The court received the Petitioner's timely § 2255 Motion on November 5, 2012, and ordered the United States to respond within sixty days. See Order, Nov. 6, 2012. The United States filed its Response on January 4, 2013. The court received no timely reply from the Petitioner.

On January 30, 2013, the court denied relief on all claims except Ground One, which the court held in abeyance. Ground One contained sworn allegations which the United States' Response failed to rebut, so the court directed an expansion of the record. To that end, the court ordered Assistant Federal Public Defender Keith L. Kimball to submit, within twenty days, an affidavit responding to the Petitioner's sworn statements.

In the meantime, the court received the Petitioner's "Reply to the Government's Motion Pursuant to 28 U.S.C. § 2255, Based on Counsel of Record Being Ineffective in the Above Case" ("Reply"), which he mailed from prison the same day the court entered its Memorandum Order. See Reply at 6 (reflecting mailing date of January 30, 2013, and affirming truth of all statements therein pursuant to 28 U.S.C. § 1746). The Clerk filed the untimely Reply subject to defect. In the Reply, the Petitioner argued that the United States' Response was insufficient to rebut the sworn statements supporting Ground One of the Motion.

The court independently reached the same conclusion, see Mem. Order at 6-9, so the Petitioner's objection to disposition on the record, as it existed on January 30, 2013, is **MOOT**. Because the Reply presents additional facts submitted under penalty of perjury, the court hereby **LIFTS** the defect and considers those facts in the present analysis.

Mr. Kimball filed his affidavit ("Kimball Affidavit") on February 19, 2013, and certified that he mailed a copy to the Petitioner. The Petitioner had fourteen days to file a supplemental response. See Mem. Order at 9. The court received no rebuttal from the Petitioner, and the matter is now ripe for review.

## II. LEGAL STANDARDS

### A. Ineffective Assistance of Counsel

To prove ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, that (1) his attorney's performance was seriously deficient; and (2) the deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

In testing deficient performance, counsel's actions or omissions must be "measured against what an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray,

82 F.3d 593, 599 (4th Cir. 1996). The court must attempt to "eliminate the distorting effects of hindsight," and instead "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In doing so, he "must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Because a petitioner must satisfy both parts of the test for ineffective assistance of counsel, a failure to carry the burden of proof as to one prong precludes relief and relieves the court of the duty to consider the other. Strickland, 466 U.S. at 700.

In the plea-bargaining context, an attorney who fails to communicate a formal, potentially favorable plea offer to a defendant before its expiration renders unconstitutionally deficient performance. Missouri v. Frye, 132 S. Ct. 1399, 1408-09 (2012); see also Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012). To show prejudice, petitioners "must demonstrate a

reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel [and] a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." Frye, 132 S. Ct. at 1409. The precise contours of the prejudice analysis are still undefined, although relevant factors include a petitioner's "credible post hoc testimony"; "a disparity between the sentence offered and the sentence actually received"; and indicia of a petitioner's willingness or unwillingness to plead guilty. Merzbacher v. Shearin, 706 F.3d 356, 366-67 (4th Cir. 2013).

## B. Disposition Without a Hearing

The court does not need a hearing on a § 2255 petition if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In that event, the court may deny the motion on the basis of the pleadings. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). "When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful." Id.

## III. FACTS

Based on the record of the case, and the undisputed portions of the verified pleadings, the court finds the following facts. On October 19, 2010, the Federal Public

Defender was appointed to represent the Petitioner, and Mr. Kimball was assigned to the case. Kimball Aff. at 1. On October 26, 2010, Mr. Kimball met with the Petitioner at the Western Tidewater Regional Jail. Id. In accordance with his usual practice, Mr. Kimball "advised Mr. Wallace of his options regarding the indictment. <u>This would have included the option of pleading guilty and receiving a three level reduction in his guidelines for 'acceptance of responsibility.'</u>" Id. (emphasis added).[1] In point of fact, the Petitioner had no other options for dealing with the one-count indictment, other than proceeding to trial or hoping that the United States would dismiss the charge, when there was no support for the latter.

---

[1]   Mr. Kimball met with the Petitioner three times: on October 26, 2010; on November 12, 2010; and on December 1, 2010. See Kimball Aff. at 1. The Kimball Affidavit does not state explicitly when Mr. Kimball explained this option to the Petitioner. However, other sworn statements suggest that the conversation took place at the October 26th meeting or, at the latest, on November 12, 2010.

The Petitioner describes a "conflict between petitioner and counsel" that arose at some point before November 10, 2010, when the Petitioner sought other counsel from Michael M. Morchower, a private attorney. See Reply at 2. The Petitioner also recounts a conversation in which he "told counsel Kimball to seek a deal." Id. Mr. Kimball contacted the United States on November 15, 2010, to express interest in a plea. See Kimball Aff. at 2. Mr. Kimball's conversation with the Petitioner about a guilty plea must have occurred before November 15, 2010. Taken together, these statements indicate that the Petitioner and Mr. Kimball discussed the option to plead guilty, with the expectation of a three-level reduction, at one of their first two meetings. See infra Part IV.B.2.

The relationship between the Petitioner and Mr. Kimball deteriorated, in part because the Petitioner thought Mr. Kimball was not sufficiently aggressive in pursuing the Petitioner's own particular theory of the defense case. See Reply at 2. Specifically, the Petitioner cites Mr. Kimball's "refusal to even send an investigator out to speak with the witnesses petitioner had provided counsel" as "the reason for petitioner to lose confidence in his counsel's ability to protect the best interest of his client." Id. Dissatisfied with Mr. Kimball, the Petitioner paid the first installment of a retainer to Mr. Morchower on November 10, 2010. Id.

Nevertheless, Mr. Kimball was not immediately discharged by the Petitioner or relieved of his duties as counsel by the court. Mr. Kimball met with the Petitioner for the second time on November 12, 2010. See Kimball Aff. at 1. Thereafter, on November 15, 2010, Mr. Kimball contacted Assistant United States Attorney Howard Zlotnick to express interest in a plea. Id. at 2; see also Resp. Ex. B.[2] According to Mr. Kimball, Mr. Zlotnick replied via email that same day: "Not much we can do for this guy. He can plead to the indictment but that is about all."

---

[2] The United States appended a copy of Mr. Kimball's November 15th email to its Response. Although the Response was not submitted under penalty of perjury, it corroborates the sworn statements in the Kimball Affidavit.

Kimball Aff. at 2.[3] Mr. Zlotnick followed up with a letter dated November 19, 2010, in which he extended a formal offer on behalf of the United States: "If you are interested in resolving this matter with a guilty plea to the felon in possession charge without a cooperation agreement in order to obtain the three points for acceptance of responsibility, please let me know by 4:00 p.m. on November 29, 2010." Mem. Ex. A; see also Kimball Aff. at 2.

"The three points" refers to a reduction in one of the elements used to calculate a defendant's advisory sentencing guideline range. See U.S.S.G. § 3E1.1. As a matter of routine, a defendant is eligible for a two-point reduction, if he "demonstrates acceptance of responsibility for his offense." Id. § 3E1.1(a). If the defendant promptly notifies the United States of his intent to plead guilty, "thereby permitting the government to avoid preparing for trial," the United States may move for an additional one-point reduction. Id. § 3E1.1(b). The court routinely grants such motions. They are necessarily contingent on the defendant providing notice early enough for the government to save the time its attorneys would otherwise spend preparing for trial. In this case, because Mr. Zlotnick's trial preparation was to begin on November 29, 2010, that was

---

[3] The Kimball Affidavit merely quotes this reply email. No copy was provided to the court.

8

the latest date on which the United States would agree to move for the additional one-point reduction. See Mem. Ex. A. Mr. Zlotnick's November 19, 2010, letter offered nothing more than a confirmation of the government's willingness to move for the additional one-point reduction. In sum, its terms differed from Mr. Kimball's discussions with the Petitioner in just one respect: the letter set a deadline for acceptance.

On November 22, 2010, the Petitioner paid the balance of Mr. Morchower's fee, believing that trial was inevitable because "no deal could be reached." See Reply at 2-3. The defense team then began a protracted process of substituting Mr. Morchower for Mr. Kimball. See Kimball Aff. at 2; Reply at 2-3. That process finally ended on December 2, 2010, when the court entered an Agreed Order of Substitution of Counsel. In the interim, on November 29, 2010, the United States' formal offer lapsed. The Petitioner did not receive a copy of Mr. Zlotnick's letter, until he began to prepare the instant Motion. Mem. at 4.

## IV. ANALYSIS

### A. Formal Plea Offer

The Petitioner's primary argument for relief proceeds under the theory of Missouri v. Frye: that counsel erroneously failed to communicate a formal plea offer, and that the Petitioner, as a result of counsel's error, missed the opportunity to accept that favorable offer. In Frye, the Supreme Court held that

"counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408. Accordingly, an attorney who permits such an offer to lapse without presenting it to his client renders constitutionally defective performance. Id.

It follows logically that, in order to examine a potential constitutional violation, courts conducting a Frye analysis must first identify the particular offer that counsel allegedly failed to deliver. The Petitioner's case turns on his argument that that Mr. Kimball failed to deliver one specific "plea offer": the letter from Mr. Zlotnick dated November 19, 2010.

The Motion initially refers to "a plea offer" in general terms: "Petitioner argues that his attorney never made any mention of a plea offer by the government, even though he was aware of petitioner [sic] willingness to accept a plea offer." Mot. at 5. However, the Petitioner's subsequent pleadings indicate that his argument focuses on the November 19, 2010, letter as the particular embodiment of the plea offer. At several points, the Petitioner refers explicitly to that document. See Mem. at 4 ("The only reason petitioner became aware of such an offer is because the memo was turned over to petitioner . . . ."); see also Reply at 4 ("The petitioner believes that Kimball . . . forgot about the memorandum.").

The Petitioner makes repeated references to the government's initiative, adding further support to the conclusion that "the offer" means the letter that Mr. Zlotnick sent on behalf of the United States. See Mem. at 3 ("At no point during his being counsel for petitioner did [Kimball] advise his client that the government had placed a plea deal on the table."); Reply at 2 ("[P]etitioner was unaware of the fact that the government had contacted counsel with a plea offer . . . ."); Reply at 3 ("[P]etitioner . . . noticed the memorandum that the government forwarded to counsel Kimball offering a plea deal."). By focusing on the government's conduct, the Petitioner refers clearly to the letter of November 19, 2010.

Finally, the Petitioner's own account of the timeline indicates that the "plea offer" refers to Mr. Zlotnick's November 19, 2010, letter. "The petitioner filed a motion to have counsel removed from his defense team and it was during this transaction counsel became aware of the Government being willing to accept a plea." Mem. at 4. (emphasis added). The "transaction" of replacing Mr. Kimball with Mr. Morchower ran from November 10, 2010, to December 2, 2010.[4] That time period encompassed November 19, 2010, the date when the Petitioner

---

[4] See supra Part III.

argues "counsel became aware" of the United States' plea offer. Mem. at 4.

In effect, the Petitioner missed the opportunity to respond to one particular document: the November 19, 2010, plea letter. However, the Petitioner does not, and cannot, argue that he was unaware of the option set forth in the letter, because Mr. Kimball had reviewed it with the Petitioner, and the Petitioner rejected it,[5] albeit before the United States extended the formal offer containing those same terms. If Mr. Kimball had never explained the opportunity to plead guilty in exchange for an acceptance of responsibility adjustment, the analysis would be different. However, Mr. Kimball stated, under oath, that he did explain that course of action to the Petitioner. The Petitioner's pleadings cannot reasonably be read to dispute Mr. Kimball's sworn statements. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (instructing the court to construe a pro se Petitioner's pleadings liberally, but not fancifully).

In sum, the pleadings cannot be read to dispute Mr. Kimball's account, or that the only formal plea offer was the letter of November 19, 2010. Perhaps even more importantly, the Petitioner had no viable options, in this single-count

---

[5] See supra note 1 and accompanying text.

indictment, other than pleading guilty, as explained by Mr. Kimball and rejected by the Petitioner, or proceeding to trial.[6]

## B. Petitioner Is Entitled to No Relief Under **Frye**

Having identified the offer at issue, the court now turns to the Petitioner's two-part burden for proving a claim of ineffective assistance of counsel. To prevail, the Petitioner must show both deficient performance (i.e. non-delivery of that offer), and consequent prejudice. See Frye, 132 S. Ct. at 1409-10 (applying a Strickland analysis).

### 1. Deficient Performance

Deficient performance is a close question here. The Petitioner states that he never received the letter, nor discussed it with counsel. See, e.g., Mot. at 5. Mr. Kimball states: "I do not remember if I specifically advised Mr. Wallace when I met with him on December 1, 2010 of the contents of Mr. Zlotnick's November 19, 2010 letter." Kimball Aff. at 3. Moreover, by December 1, 2010, the offer had expired. See Mem. Ex. A.

Prior to the offer's expiration, the defense team was engaged in a convoluted process of substituting Mr. Morchower for Mr. Kimball.[7] The Petitioner suggests that Mr. Kimball neglected promptly to inform Mr. Morchower about the pending

---

[6] See supra Part III.

[7] See supra Part III.

13

offer during their turnover. See Reply at 3. Mr. Kimball does not contest that assertion. He reports that he delivered files to Mr. Morchower on December 2, 2010. Kimball Aff. at 3.[8]

The court is troubled by the claim of deficient performance, as it implicates concerns about the delivery of time-sensitive information to clients when substituting one attorney for another. At this juncture, however, the court need not elaborate on the precise contours of counsel's duty in an attorney substitution scenario, nor determine whether Mr. Kimball's performance in this case was, in fact, deficient. Because the Petitioner cannot show that he was prejudiced by Mr. Kimball's representation, he is entitled to no relief.

## 2. Prejudice

Proof of prejudice, in the context of plea negotiations, requires proof of a reasonable probability that a petitioner would have accepted the offer. See Frye, 132 S. Ct. at 1409. The Petitioner shows no probability whatsoever that he would have accepted the terms of the November 19, 2010, letter. In fact, his evidence is to the contrary.[9]

---

[8] This file delivery was prompt, as the court's order of substitution was entered and filed on that same day, December 2, 2010. Again, though, the turnover of files occurred after the plea offer had expired. See Mem. Ex. A.

[9] The court views the evidence as it existed as the time of the plea offer, not based on after-the-fact second thoughts

### a. **Prior Rejection of the Terms**

During his consultations with Mr. Kimball, the Petitioner was informed of potential terms identical to those contained in the formal offer,[10] after which the Petitioner's course of action was to retain Mr. Morchower and express dissatisfaction with Mr. Kimball's representation on the basis that Mr. Kimball was not vigorously pursuing a defense to the charge. See Reply at 2-3. Mr. Zlotnick's letter added nothing to the terms described by Mr. Kimball, except the precise date (November 29, 2010) on which the Petitioner would become ineligible for the additional one-point reduction in his offense level. That deadline, however, became irrelevant: the Petitioner made his decision to hire Mr. Morchower--and to proceed to trial--at least a week before the United States' offer expired. See Reply at 2-3. In brief, the Petitioner had the opportunity to consider the terms contained in the government's offer, and he pursued another course of action. The Petitioner offers no evidence to support the conclusion that reviewing those same terms in writing, together with the deadline, would have altered his decision to pursue new counsel and defense of the charge.

---

following a conviction, on the sole count of unlawful possession of a firearm by a felon, by a jury after a three-day trial.

[10] See supra note 1 and accompanying text.

## b. Disparity in Sentencing Outcomes

A significant disparity between the sentence received and the sentence offered can help a petitioner carry his burden of showing a "reasonable probability" that he would have accepted the offer. See Merzbacher, 706 F.3d at 366-67. No bright-line rule defines a sufficiently significant disparity, but the case law provides relevant metes and bounds. See, e.g., id. at 366 (comparing a deal for ten years to an actual sentence of life); Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003) (20-month deal versus 262-month sentence); Griffin v. United States, 330 F.3d 733, 738-39 (6th Cir. 2003) (60-month deal versus 156-month sentence).

The potential disparity in this case is not nearly as substantial. Following a jury trial and conviction, the Petitioner was sentenced to the statutory maximum of 120 months imprisonment. That sentence was in the middle of a guideline range of 110 to 137 months. See PSR Part D. The hypothetical outcome under a plea deal, even assuming the Petitioner received the full three-point reduction, would not yield a disparity so great as to compel the conclusion that the Petitioner would have pled guilty under the terms of the deal.[11]

---

[11] Holding constant the criminal history of IV, the base offense level of 20, and the six points of enhancements for pre-trial (or pre-plea) conduct, but reducing the offense level by three points for acceptance of responsibility and withholding the

16

### c. Petitioner's Assertions of Innocence

The United States argues that the Petitioner's "repeated denial of guilt," including under oath at trial, precludes him from demonstrating prejudice. Resp. at 7; see also id. at 8 ("Even assuming, arguendo, that the first prong of Strickland was met, Wallace always maintained his innocence . . . ."). This factor is potentially useful in determining whether a petitioner presents a "reasonable probability" that he would have accepted a plea. See Merzbacher, 706 F.3d at 366. On these facts, however, it does not carry the persuasive value that the United States suggests.

In the state court habeas proceedings described in Merzbacher, that court found the defendant's repeated denials of guilt to be convincing evidence that he would have rejected even a highly favorable plea offer. Id. The court's inference was supported by the significant collateral consequences that would have followed the defendant's admission of guilt: first, he

---

enhancements for perjury at trial, the Petitioner's total offense level, if he had pled guilty before November 29, 2010, likely would have been 23, resulting in an advisory guidelines range of 70 to 87 months. See U.S.S.G. Ch. 5 Pt. A. Moreover, the Petitioner still faced a statutory maximum of 120 months and would have been so informed in the plea colloquy, as the guidelines range is only advisory. The controlling statutory sentencing factors are set forth in 18 U.S.C. § 3553(a). Finally, the Petitioner himself contributed voluntarily to the higher guidelines range for sentencing by committing perjury at trial. See infra Part IV.B.2.c.; infra note 12; see also PSR ¶ 17; Sentencing Hr'g Tr. at 4, 12-14, Mar. 22, 2011.

would have been immediately subject to civil liability, whereas he had a "'good chance of successfully maintaining his defense'" at trial; second, the defendant was charged with child sexual abuse, and adamantly refused to plead guilty to those charges in front of his wife. Id.

None of those collateral circumstances are present in this case, where the underlying charge was for unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g). Moreover, a criminal defendant's exercise of his Fifth Amendment rights, without more, adds very little value to the Frye analysis, and does not categorically prevent a petitioner from demonstrating prejudice. See Mem. Order at 7-8; see also Griffin, 330 F.3d at 738-39. For example, a defendant might adamantly insist that he is not guilty, but nevertheless be inclined to plead guilty if presented with a sufficiently attractive plea offer to avoid potential consequences of a trial. If counsel fails to relay that offer, the defendant could conceivably show prejudice from the foregone opportunity, despite his prior claims of innocence.

This, however, is not such a case. The Petitioner is unable to show prejudice because he has not shown a reasonable probability that he would have accepted the plea offer, not because he asserted his innocence.[12] The court agrees with the

---

[12] The jury found the Petitioner guilty beyond a reasonable doubt of the one count charged, and simply did not believe the

United States that the Petitioner is not entitled to relief, but disagrees with the United States' argument that the Petitioner's assertions of innocence necessarily compel that conclusion.

### 3. Summary

In the final analysis, the Petitioner fails to demonstrate a reasonable probability that he would have accepted the formal offer extended by the United States on November 19, 2010. He fails, therefore, to satisfy the prejudice prong of Strickland's framework for analyzing ineffective assistance of counsel. Such failure independently precludes relief. Strickland, 466 U.S. at 700; see Frye, 132 S. Ct. at 1409-10.

### C. Petitioner Is Entitled to No Relief Under Lafler

From the foregoing discussion, it is clear that the Petitioner seeks relief under Missouri v. Frye. Nevertheless, mindful of the duty to construe pleadings liberally,[13] the court carefully examines the record to discern whether the Petitioner has raised arguments under Lafler v. Cooper; that is, whether

---

Petitioner's testimony of innocence. In applying the sentencing enhancement for perjury, the court made separate, specific findings that the Petitioner willfully offered false testimony as to a material issue. See supra note 11. Perjured testimony, of course, deserves no protection, constitutional or otherwise. See, e.g., United States v. Alvarez, 132 S. Ct. 2537, 2540 (2012); Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia, 859 F.2d 276, 281 (3d Cir. 1988).

[13] See Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978); see also Beaudett, 775 F.2d at 1278; supra Part IV.A.

deficient advice from counsel caused defendant to reject a plea deal and improvidently proceed to trial. See 132 S. Ct. at 1383.

The only suggestion of a possible Lafler claim is the Petitioner's suggestion that Mr. Kimball advised him "to hold out as long as possible to see if the government would offer a better deal." Reply at 2. As the argument goes, by offering that advice and then subsequently failing to inform the Petitioner of the offer's expiration date, Mr. Kimball effectively left the Petitioner no choice but to go to trial. See Reply at 2-3.

That argument is refuted by the Petitioner's own facts. The critical, threshold distinction between this case and Lafler is the absence of causation. The record indicates that Petitioner made his decision to go to trial before Mr. Zlotnick even extended the United States' offer. "[E]ven before counsel Kimball had received a response from the government on November 19, 2010 about a plea deal, the petitioner sought to retain paid Counsel because he felt there was no choice[14] but to proceed to trial . . . ." Reply at 2. Given this timeline, counsel's advice about negotiation strategy, assuming that such advice was given, did not affect the Petitioner's decision to go

---

[14] The court does not read the Petitioner's claim that he had "no choice" literally to mean that he never heard about the option to plead guilty. His own statements foreclose that reading. He concedes that he "told counsel Kimball to seek a deal." Reply at 2. The United States offered no deal more favorable than the option described by Mr. Kimball, so the Petitioner proceeded to trial. See supra notes 1 & 5 and accompanying text.

to trial, let alone cause him to suffer prejudice. Accordingly, Lafler does not apply to this case.

### D. Hearing Is Unnecessary

The files, records, and affidavits of this case present no issues that require credibility determinations by the court. The Petitioner does not claim that Kimball never advised him of the opportunity to plead guilty and obtain a three-point reduction.[15] Even assuming that Mr. Kimball did not deliver the November 19, 2010, letter to the Petitioner, the Petitioner has shown no prejudice from non-delivery.[16] Simply put, there are no disputed issues of material fact for the court to resolve with a credibility determination. Accordingly, the court need not hold an evidentiary hearing, and the Petitioner's request for such a hearing is **DENIED**. See United States v. Baysden, 326 F.2d 629, 631-32 (4th Cir. 1964).

### V. CONCLUSION

For the reasons stated herein, and for the reasons stated in the Memorandum Order of January 30, 2013, the Petitioner's Motion is **DENIED** in its entirety. The Petitioner is **ADVISED** that he may appeal from this Opinion and Final Order, and from the Memorandum Order of January 30, 2013, by forwarding a written notice of appeal to the Clerk of the United States District

---

[15] See supra Part III.

[16] See supra Part IV.B.

Court, 2400 West Avenue, Newport News, Virginia 23607. The written notice of appeal must filed within sixty (60) days of the date of this Opinion and Final Order. For the reasons stated herein, and for the reasons stated in the Memorandum Order of January 30, 2013, the court declines to issue a certificate of appealability.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Final Order to the Petitioner; to Keith Kimball; to Michael Morchower; and to the United States Attorney.

It is so **ORDERED**.

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

Newport News, Virginia
April 4 , 2013